UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE:   BRIAN KIRSCH,                    Case No. 07-20338

         Debtor.                          Chapter 13

**ORDER SUSTAINING TRUSTEE'S OBJECTION TO
CONFIRMATION OF THE AMENDED PLAN FILED JUNE 5, 2007**

The debtor's amended Chapter 13 plan does not specify what will happen to any tax refunds he receives during the plan's lifetime. The trustee objects to confirmation of the amended plan, arguing that by failing to address the issue of tax refunds, the plan violates the 11 U.S.C. § 1325(b)(1)(B) requirement that the plan devote "all of the debtor's projected disposable income to be received in the applicable commitment period" to payment of unsecured creditors. The Court sustains the trustee's objection to confirmation, and orders the debtor to submit an amended plan within thirty (30) days of the date of this Order.

### I. Factual Background

According to his Form B22C, the debtor is a below-median income debtor. His original Chapter 13 plan, filed on the day he filed his petition, specified a plan length of 60 months. (Chapter 13 plan, p. 1) In addition, it contained a provision that stated, "Debtor will not be required to contribute ½ half of his tax refunds as they are necessary for the support and maintenance of the debtor, the debtor's spouse, and the debtor's dependents." (Chapter 13 plan, p. 3) Line 13 of the

1

debtor's Schedule I, which shows "other monthly income," lists $567.42 for "anticipated projected tax refunds." (Schedule I, line 13) Adding this to the debtor's other sources of income, the debtor's total household income is shown on his Schedule I as $3,589.18. (Schedule I, line 16) His Schedule J shows monthly expenses of $3,193.50, for a net monthly income of $395.00. (Schedule J, line 20(b) and (c))

In April 2007, this Court decided <u>In re Walls</u>, No. 06-21228 (Bankr. E.D. Wis. April 10, 2007). In <u>Walls</u>, the Court held that the language the debtor included in her original plan–blanket language allowing the debtor to retain the entirety of any and all tax refunds she received over the life of a plan–violated the provisions of § 1325(b)(1)(B). In light of this decision, on May 1, 2007, the Court sustained the trustee's objection to confirmation of the original plan in the present case on the basis of such blanket language.

On June 5, 2007, the debtor filed the amended Chapter 13 plan. The amended plan retained the plan length of 60 months. (Am. Chapter 13 plan, p. 1) The debtor removed from the amended plan the language about retaining his tax refunds for the life of the plan. (Am. Chapter 13 plan, p. 3) Indeed, the amended plan says nothing about tax refunds at all. Thus, the trustee filed an objection to confirmation of the amended plan, arguing that it "does not provide all projected disposable income in pledging the ½ of the tax refunds for the duration of the plan." (June 22, 2007 Objection to Confirmation of Plan)

2

The Court held hearings on the trustee's objection on July 10 and July 31, 2007.

## II. Legal Analysis

In In re Walls, this Court held that tax refunds constitute disposable income. As such, when a debtor's plan draws objection, § 1325(b)(1)(B) requires that the plan devote the refunds (or, per the long-standing policy of this district, one-half of the refunds) to payment of the unsecured creditors. The Court held in Walls that a debtor could not include in a contested plan a blanket provision providing for retention of all refunds received during the life of the plan. Rather, the Court ruled that if a debtor's particular circumstances in a given year gave rise to a need to use the full amount of that year's tax refunds "for the maintenance or support of the debtor or a dependent of the debtor," the debtor could petition the trustee and, if necessary, the Court for permission to retain the full refund for that year.

The debtor in the case at bar attempts, as did the debtor in Walls, to retain the entire tax refund for each of the five years of his plan. Like the debtor in Walls, this debtor's income falls below the median income for a household of his size in Wisconsin. Like the debtor in Walls, this debtor doubtless could benefit from having the use of his tax refunds each year, rather than having to provide half of those refunds to the trustee for the benefit of the unsecured creditors. There are, however, two differences between this debtor's approach and that of the debtor in Walls. First, rather than providing in his plan that he gets to keep his entire refund

for each year of the plan, this debtor does not mention tax refunds in his plan at all. Second, this debtor acknowledges his anticipated refund as anticipated income on Schedule I, and his Schedule J shows expenses that could be met by the use of that refund.

The debtor in the case at bar makes several arguments in support of his contention that this approach should survive § 1325(b)(1)(B) scrutiny when the approach in Walls did not. First, he takes issue with the Court's statement in Walls that tax refunds constitute disposable income because they are not necessary to meet the debtor's tax obligations. The debtor acknowledges that a tax refund is not required to pay a debtor's taxes. But, he argues, this does not mean that the refund automatically constitutes "disposable" income. While the debtor may not need the income to pay tax obligations, he argues that he may very well need it to pay other necessary expenses for his support and maintenance or that of his family.

Second, the debtor argues that the fact that he obtains this income by means of a tax refund, rather than through a paycheck or some other method, should not mean that it is treated any differently than other forms of income. He argues that the Court should look to see whether the debtor's expenses require him to use the refund money in just the same way it determines whether his expenses require him to use his pay check–by evaluating his expenses. If his legitimate expenses show a need for the refund, the debtor argues, the refund should not be considered disposable income.

4

Third, the debtor argues that if a time comes when the trustee feels that the debtor does not need the entire refund, the trustee has the ability to request that the debtor modify the plan means of a motion under 11 U.S.C. § 1329. Thus, he maintains, the trustee is not "stuck" with the loss of the refunds in cases where the debtor's circumstances change for the better.

Finally, the debtor argues that the solution the Court proposed in <u>Walls</u>–that the debtor petition the trustee and, if necessary, the Court for the use of the entirety of his refund in years in which special needs require it–is impractical. He argues that many debtors cannot afford to pay counsel to come back to the court in year three or four of the plan. Many other debtors lose touch with their counsel, or do not know that they can petition to retain the refunds. He argues that making debtors go to the trustee or the Court in a particularly tough year is inconvenient and unworkable for these reasons.

While the Court acknowledges the creativity of the debtor's argument, the Court does not see that this approach fares any better under § 1325(b)(1)(B) than did the blanket language approach. It will discuss each of the debtor's arguments in turn.

    A.    <u>Tax Refunds Are Eligible to be Considered "Disposable Income"</u>

Each year, a debtor has a pool of income. It can be comprised of salary and wages, interest or dividend income, government benefit payments, or other kinds of income. That pool of income is available to him to pay certain expenses that are

5

Case 07-20338-pp    Doc 41    Filed 08/13/07    Page 5 of 12

necessary to his support and maintenance, and to the support and maintenance of his dependents. One of those necessary expenses is taxes. When he has money withheld from his pay for tax purposes, that money leaves the "income" pool–it is no longer available to him to spend on other things.

In the spring, the debtor files his tax return. That return shows that he's due a refund, either because he had too much withheld from his paycheck or because he qualifies for an Earned Income Tax Credit, Federal Child Tax Credit, or similar program. What the debtor now knows, that perhaps he did not know before, is that that particular sum of money is not necessary to pay the taxing authorities. Because it is not necessary to pay the taxing authorities, that amount of money is eligible to re-enter the pool of income. The question is whether this automatically means that the refund money qualifies as "disposable" income.

The debtor in this case argues that it does not. The debtor argues that the simple fact that the money is not necessary to meet tax obligations does not mean it is not necessary to meet other obligations. He argues that many debtors count on that tax refund money to pay for things they need to support their families. In his particular case, he argues that his Schedule J demonstrates that he has valid, legitimate support expenses that he needs to meet by using his anticipated tax refund.

In one respect, the Court agrees with the debtor. At bottom, "disposable income" is income that a debtor does not require to meet daily living expenses for

6

himself and his dependents. In layman's terms, it is that portion of the debtor's total amount of income that is not absolutely necessary. Just because a debtor does not have to pay money to the taxing authorities does not mean he does not have to pay it to someone else. So perhaps it is a bit misleading for the <u>Walls</u> case, and those upon which it relies, to deem all tax refunds "disposable" income regardless of the debtor's circumstances. Perhaps the more accurate description is that tax refunds are income that is *eligible* to be considered disposable income. This leads, however, into a consideration of the debtor's next argument.

      B.     <u>Tax Refund Income is Different From Other Kinds of Income</u>

The debtor next argues that having a discussion about how to treat tax refund income under the disposable income test should be no different than having a discussion about how to treat wage income, or government benefits income, or any other kind of income under the disposable income test. Put another way, he wonders why tax refund income is considered so different that the trustee in this district should automatically get half of it (and in some other districts, automatically get all of it) for the unsecured creditors.

The answer lies in the timing. Debtors incur many necessary expenses, such as food, rent, mortgage payments, utilities and so forth, monthly. Most debtors are paid by their employers weekly, bi-weekly or monthly. As they incur necessary expenses, then, the income that they receive from their employers is available to pay those necessary expenses. Without that money, the debtor would be hard-

7

pressed to survive.

Tax refund money is not available weekly, bi-weekly or monthly. Tax refund money appears once a year, in a lump sum. In most instances, therefore, it cannot be money that the debtor depends on each month to buy food, or pay the rent, or pay the electric bill. It cannot be money without which the debtor would be hard-pressed to survive. Indeed, if it is a refund that results from over-withholding, it almost has to be money that the debtor does not rely on for daily subsistence, because it is money that the debtor could access (by reducing the amount of withholding), but does not.

The question, therefore, is whether the once-a-year, lump-sum nature of tax refunds–money without which the debtor manages to survive for those parts of the year in which it is not available to him–justifies its being treated differently than money that is available to the debtor all year. The Court concludes that the answer to that question is yes.

Certainly one can envision circumstances in which the once-a-year, lump-sum tax refund would be necessary for the maintenance and support of the debtor and his dependents. The debtor whose car is on the verge of falling apart, and who must have a car to get back and forth to work, might need the one-time, lump-sum payment for transportation. The debtor whose roof has a hole in it might need that amount to make the house habitable. The debtor who has a once-a-year health insurance premium payment might need the one-time, lump-sum payment to insure

his family. But these are case-by-case, year-by-year circumstances. They do not apply to all low-income debtors for all the years of their plans.

Presumably the rationale behind trustees taking some or all of the tax refund is the reasoning that if the debtor got along without the money all year, it was, by definition, disposable. The exception is the case where the debtor can demonstrate that his circumstances–the broken-down car, the hole in the roof, the insurance premium–in this particular year are different. And in those cases in which the debtor's circumstances are demonstrably different, the debtor has the ability to ask the trustee–and if the trustee refuses, the Court–to allow him to keep all of the tax refund for that particular year.

Thus, the Court disagrees with the debtor that tax refund income is not different in nature from other income. The Court finds that tax refund income is different enough to warrant the trustee taking one-half of the refund unless the debtor convinces the trustee that his circumstances in a particular year require him to retain the entire refund.

### C. Requiring the Debtor to Ask for the Refunds is Not Impractical

Counsel for the debtor argues that requiring debtors to come back to the trustee or the Court two, three or four years into a plan to request the entire refund denies the practical realities of many debtor's lives. He argues that many debtors do not stay in touch with their lawyers, and many debtors' counsel have trouble finding their clients two or three years into a plan. He also notes that many debtors

9

do not have the funds to ask their attorneys to go back to the trustee or to the court for them. The Court has no doubt that these facts are true. But if a debtor truly finds himself in need of the refund in a particular year, he might well be motivated to get back in touch with his counsel. Perhaps he need not even do so. He can contact the trustee directly, and plead his case. The debtor could even come to the Court on his own, if need be. Certainly the costs would mount for debtors who found themselves returning to the court year after year. But this is not likely to happen for most debtors. If the need is there, the debtors will find a way to ask the trustee to help them meet that need.

> D. Requiring the Trustee to Determine that the Debtor No Longer Needs All of His Refund Improperly Shifts the Burden of Obtaining Information to the Trustee.

The trustee argued at the hearing that the debtor's proposal–that he be allowed to retain the tax refunds for all five years of his plan, and then if the trustee determines that the debtor no longer needs all of the refunds, the trustee can make a motion to modify the plan–shifted the burden of proof from the debtor to the trustee. The Court agrees that the debtor's proposal shifts a burden to the trustee, but it is less the legal burden of proof than it is the burden of obtaining knowledge about the debtor's financial circumstances.

When a debtor files a Chapter 13 petition and schedules, the information contained in the schedules reflects the debtor's financial situation–particularly income and expenses–at the time of filing. Over the life of a three- or five-year plan,

10

that information can become outdated and inaccurate. The person first, and most likely, to become aware of that is the debtor. The debtor's counsel argues that the trustee would find out about any improvements in the debtor's circumstances when the trustee obtained the debtor's tax returns each year. Assuming that the debtor promptly provided the tax returns, it is true that the trustee eventually would learn that the debtor's financial circumstances had improved. But the trustee might not learn this until a good deal of time had passed, and indeed, might not learn it until the debtor already had spent the full tax refund.

In short, the debtor is in a better position to know when his circumstances require the full tax refund than the trustee is in a position to know when the debtor's circumstances do not require the tax refund. To allow the debtor to keep the full refund for the life of the plan, and then require the trustee to figure out when the debtor no longer needs it and file a motion for a modified plan in time to take half of the refund is impractical, and puts the burden of knowledge on the wrong party.

### III. Conclusion

As the Court has noted, it has long been the practice in this district that the trustee takes one-half of the tax refund unless the debtor demonstrates that he requires it for maintenance and support. This policy is more generous than that in many districts where the trustee takes the entire refund. While the Court appreciates the creative arguments that have been made in this and other cases in

an attempt to empower debtors to retain the entire refunds for the life of their plans, the Court does not find those arguments persuasive.

WHEREFORE, the Court hereby SUSTAINS the trustee's objection to confirmation of the amended plan filed June 5, 2007. The debtor is granted thirty (30) days from today's date to file an amended plan.

SO ORDERED this 13th day of August, 2007.

_____
HON. PAMELA PEPPER
United States Bankruptcy Court

Cc: Brian Edward Kirsch
Debtor

Michael J. Watton
Counsel for the Debtor

Thomas J. King
Standing Chapter 13 Trustee

Office of the U.S. Trustee